# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 632 | **DATE** | 9/20/2002 |
| **CASE TITLE** | Walter Blair vs. Supportkids, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Order. Defendant's motion to apply fully-briefed Rule 12(b)(6) motion to dismiss to plaintiff's amended complaint is granted. Defendant's motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

*Amy J. St. E*
*9-20-02*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | SEP 23 2002 | | 26 |
| ✓ | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | CV | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER BLAIR and | ) | |
| JOHN GRAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 02 C 0632 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| SUPPORTKIDS, INC., | ) | |
| d/b/a CHILD SUPPORT ENFORCEMENT; | ) | |
| and RICHARD "CASEY" HOFFMAN, | ) | |
| | ) | |
| Defendants. | ) | |

*DOCKETED*
*SEP 2 3 2002*

## MEMORANDUM OPINION AND ORDER

Walter Blair and John Gray filed suit against Supportkids, Inc., d/b/a Child Support

Enforcement ("CSE") and Richard "Casey" Hoffman, alleging that Defendants maliciously and

fraudulently sent Plaintiffs' employers simulated order/notices requiring income withholding

pursuant to the Illinois Income Withholding for Support Act, 750 ILCS 28/1 *et seq.* Defendants

have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6). (R. 8-1.) For the reasons set forth below, Defendants' motion to dismiss is

denied.

### BACKGROUND

CSE is a child support collection agency that purports to represent parents owed child

support obligations. (R. 24-1, Compl. at ¶ 9.)[1] CSE enters into contingent fee arrangements with

---

[1] All citations to the "Complaint" are in fact to the Amended Complaint filed on September 12, 2002. (R. 24.1) Defendants did not object to the filing of the Amended Complaint, and at the request of the parties, Defendants' Motion to Dismiss is deemed to have challenged the Amended Complaint.

26

individuals owed child support and attempts to collect back child support on their behalf. (*Id.* at ¶ 10.) Richard "Casey" Hoffman is the chief executive officer of CSE. (*Id.* at ¶ 8.)

Plaintiff Walter Blair was divorced in 1993. Blair contends that under the divorce decree his support obligations terminated on December 9, 1998. (R. 24-1, Compl. at ¶¶ 12, 14.) In May 2001, however, Defendants sent to Blair's employer in Illinois a document entitled "Illinois Department of Public Aid, Division of Child Support, Order/Notice to Withhold Income for Child Support," indicating that Blair owed $85,376.56 in child support originating from his 1993 divorce. (*Id.* at ¶ 12.) Blair contends that the Illinois Department of Public Aid did not authorize and had no knowledge of the order/notice. (*Id.* at ¶ 15.) He subsequently retained counsel to quash the order/notice. (*Id.* at ¶ 19.) Before the order/notice was quashed, however, Blair's employer deducted $358 from Blair's paycheck and sent it to CSE. (*Id.* at ¶ 20.)

Plaintiff John Gray was divorced in 1971. Under a divorce decree, Gray was obligated to provide $60 per week to support three children. (R. 24-1, Compl. at ¶¶ 22-23.) Gray contends that the 1971 divorce decree was informally modified and that the divorce decree was never revived. (*Id.* at ¶¶ 24, 26.) In October 2000, however, Defendants sent to Gray's employer in Illinois an "Order/Notice to Withhold Income for Child Support," a "Computation of Child Support Arrears" indicating that Gray owed $375,014.46 in child support originating from his 1971 divorce, and a one-page fax directing Gray's employer to begin wage withholding. (*Id.* at ¶ 33.) After receiving these documents, Gray's employer deducted wages in the amount of

$250.00 from his paycheck. (*Id.* at ¶ 38). Defendants also placed liens on Gray's home and tied

up Gray's savings-investment plan. (*Id.* at ¶ 36.)[2]

On January 25, 2002, Blair and Gray filed suit, alleging that Defendants sent Plaintiffs'

employers simulated order/notices and related communications that fraudulently and maliciously

directed the employers to withhold wages. (R. 24-1, Compl. at ¶¶ 41-51.) Plaintiffs argue that

Defendants have no right to withhold wages because under Illinois law only the appropriate

public agency, the obligee, or an attorney licensed to practice law in Illinois can file the

order/notices. (*Id.* at ¶¶ 45-46.) Plaintiffs seek a declaratory judgment that CSE is not entitled to

collect $460,391.02 from Plaintiffs. (*Id.* at ¶¶ 52-53.) In addition, Plaintiffs seek compensatory

damages, punitive damages, costs of suit, and other relief for fraud (Count II), defamation (Count

III), tortious interference with a contract (Count IV), unlicensed practice of law (Count V), and

violation of the Illinois Collection Agency Act (Count VI). (*Id.* at ¶¶ 54-112.) Plaintiffs assert

Counts I-VI against CSE, and Counts II, IV, V and VI against Hoffman.

On March 22, 2002, Defendants moved to dismiss Plaintiffs' Complaint. Defendants

argue that: (1) the order/notice form used is proper and Defendants are authorized to issue it; (2)

CSE is not engaged in the unlicensed practice of law and Plaintiffs have no standing to assert

such a claim; (3) Plaintiffs have failed to properly plead fraud; (4) Plaintiffs may not claim

defamation because all statements made in the orders/notices were true, and if they were not true,

Defendants were protected by a qualified privilege; (5) there was no tortious interference with a

---

[2] Although Gray contends that the 1971 divorce decree was modified and suggests that he does
not owe any back child support to his former wife, Gray recently entered an agreement to pay her
$20,000 in monthly $125 installments. (Compl. at ¶ 40, fn. 5.) Gray suggests that he did so
voluntarily, "in order to buy peace." (*Id.*)

contract; (6) the Illinois Collection Agency Act does not apply to CSE; and (7) the *Rooker-Feldman* doctrine precludes jurisdiction over Blair's claims.

## LEGAL STANDARD

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). When considering a motion to dismiss, the Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chiago*, 75 F.3d 318, 322 (7th Cir. 1996). A complaint will survive a Rule 12(b)(6) motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts entitling him or her to relief. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993).

## ANALYSIS

I.   <u>Declaratory Judgment (Count I)</u>

Plaintiffs seek a declaratory judgement that CSE is not entitled to collect any alleged child support payments from them. Defendants argue that the Court should dismiss this count because federal law authorizes them to issue an order/notice for income withholding to Plaintiffs' employers. The parties disagree over the appropriate governing law.

Although the parties agree that an order/notice form supplied by the federal government is the correct form to use for income withholding (*see* R. 8-1, Ex. E, PIQ-99-02), Plaintiffs and Defendants disagree whether federal or Illinois law controls who is authorized to send the order/notice form. Defendants contend they were permitted to issue order/notices to the Plaintiffs' employers, citing a February 2001 Policy Interpretative Question ("PIQ") issued by the

4

Federal Department of Health and Human Services' Office of Child Support Enforcement

("OCSE"). There, the OCSE confirmed that the income withholding notice/order may only be

issued *as an order* by "a tribunal or entity authorized to issue orders under State law." (R. 8-1,

Mot. to Dismiss at 9) (citations omitted). The OCSE further explained that an notice/order "may

also be sent by an individual, agency or entity *as a notice* to an employer to withhold income, but

only if it is based on an underlying withholding order issued by an appropriate authority under

State law." (*Id.* (emphasis added).). Defendants also cite a February 1999 PIQ where the OCSE

suggested that "[a]lthough the sender will ordinarily be a child support enforcement agency or

the obligee, the olbigor *or any other person* may supply an employer with an income

withholding order." (R. 15-1, Opp. to Mot. to Dismiss Ex. E (emphasis added).) Based on these

authorities, Defendants contend that they were authorized to send the order/notices in question to

Plaintiffs' employers.

Plaintiffs, on the other hand, contend that the States are free to dictate the necessary

procedural steps for income withholding and, in particular, who can send order/notices for

income withholding. Plaintiffs base this argument on the Income Withholding for Support Act,

750 ILCS 28/1 *et seq.* ("IWSA"), which regulates wage withholding for child support payments

in Illinois. The IWSA mandates that the OCSE order/notice must "be prepared and served . . . by

the *obligee or public office.*" 750 ILCS 28/20(a)(1) (emphasis added). The IWSA defines

"obligee" as "the individual to whom a duty of support is owed or the individual's legal

representative," 750 ILCS 28/15(f), and "public office" as "any elected official or any State or

local agency which is or may become responsible by law for enforcement of, or which is or may

become authorized to enforce, an order for support." 750 ILCS 28/15(h). Assuming that

Plaintiffs are correct that Illinois law controls on the question of who is authorized to send the order/notice forms, Plaintiffs have adequately pleaded their claim for declaratory judgment because they claim that Defendants were not the obligee(s), the legal representatives of the obligee(s), or a public office.

Defendants contend that the IWSA cannot trump federal law, which Defendants maintain authorizes "any" person to send an order/notice for income withholding. (R. 15-1, Opp. to Mot. to Dismiss Ex. E at 2.) Even assuming that Defendants are correct, however, Plaintiffs argue that Defendants were not authorized to send the order/notices in question because they were not, as the February 2001 PIQ specifies, "based on an underlying withholding order issued by an appropriate authority under State law." (R. 8-1, Mot. to Dismiss at 9.) Indeed, Plaintiffs allege that there is *no* basis underlying either of the order/notices at issue because neither Blair nor Gray owed any back child support. (R. 24-1, Compl. ¶¶ 14, 28.) Thus, regardless whether the federal or Illinois law governs the order/notices at issue here, Plaintiffs have alleged that Defendants were not authorized to send them, and Plaintiffs have therefore adequately pleaded their claim for a declaratory judgment.

Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Count I.

II.    Fraud (Count II)

Federal Rule of Civil Procedure 9(b) provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Under Illinois law, the elements of common law fraud are: "(1) false statement of material fact; (2) known or believed to be false by the party making it; (3)

intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980) (citations omitted); *see also Michaels v. Michaels*, 767 F.2d 1185, 1206 (7th Cir. 1985). Defendants contend that Plaintiffs fail to allege two elements: (1) that Defendants made a false statement of material fact; and (2) that Defendants knew or believed that the statement was false. (R. 8-1, Mot. to Dismiss at 18.)

Contrary to Defendants' suggestion, Plaintiffs do allege false statements of material fact. Plaintiffs allege that Defendants "caused to be transmitted to plaintiff Blair's employer in Illinois a document entitled 'Order / Notice to Withhold Income for Child Support' . . . According to the Simulated Order / Notice, plaintiff Blair owed $85,376,56 . . . ." (R. 24-1, Compl. ¶ 12.) Likewise, Plaintiffs allege that Defendants sent Gray's employer a "document entitled 'Computation of Child Support Arrears,' . . . purporting to show that plaintiff Gray owed $375,014.46 . . . ." (*Id.* at ¶ 33.) Plaintiffs further allege that these order/notices were false because neither Blair nor Gray owed any back child support. (*Id.* at ¶¶ 14, 28.)

Plaintiffs also allege that Defendants knew the statements were false: "CSE knew that its documents were bogus and that it had no right to send such documents to plaintiffs' employers." (*Id.* at ¶ 60.) Further, they contend that "Defendants knew that [the order/notices and other related documents] were not valid and that they had no right to direct plaintiffs' employers to withhold anything." (*Id.* at ¶ 48). Thus, Plaintiffs have pleaded the elements of fraud with particularity.

Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Count II.

7

III.     Defamation (Count III)

To show defamation under Illinois law, Plaintiffs must demonstrate that: "(1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication to a third party with fault by the defendant, and (3) the publication damaged the plaintiff." *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 291-92 (Ill. App. Ct. 2001). Defendants argue that the Court should dismiss the defamation claim because: (1) all statements contained in the orders/notices were true, and (2) even if the statements were not true, the Defendants were protected by a qualified privilege. (R. 8-1, Mot. to Dismiss at 18.)

Plaintiffs allege, however, that statements contained in the order/notices were false. (R. 1-1, Compl. ¶¶ 72, 75.) Because this is a motion to dismiss, the Court must assume that the facts plead in the complaint are true and resolve any ambiguities in favor of the Plaintiffs. *See Levenstein*, 164 F.3d at 347. Thus, for purposes of this motion, the Court accepts Plaintiffs' allegations that the statements made by CSE in the order/notices were false.

Moreover, accepting Plaintiffs' allegations as true, Defendants' argument that the statements were protected by a qualified privilege fails. Illinois law requires the following elements in order to find a qualified privilege: "(1) good faith by the defendant by making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Kuwik v. Star Mktg. and Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). At a minimum, Defendants cannot satisfy the fifth element -- publication in a proper manner and to proper parties only -- because Plaintiffs have alleged that it was improper for Defendants to serve the order/notices in question on Plaintiffs' employers. (R. 24-1, Compl. at ¶¶ 16, 18, 36.)

8

Thus, the Court denies Defendants' Motion to Dismiss with respect to Count III.

## IV.    Tortious Interference with A Contract (Count IV)

In Count IV, Plaintiffs allege that Defendants tortiously interfered with the contractual relationship between Plaintiffs and their employers, resulting in pecuniary losses to both and liens on property belonging to Gray. Under Illinois law, tortious interference with a contract requires that the plaintiff prove:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 676 (Ill. 1989) (citations and quotations omitted); *see also Wheel Masters, Inc. v. Jiffy Metal Prods. Co.*, 955 F.2d 1126, 1129 (7th Cir. 1992). Defendants argue that Plaintiffs fail to plead the first, second and fourth elements of tortious interference.

Contrary to Defendants' claims, Plaintiffs have pleaded all of the elements of the claim of tortious interference with a contract. Plaintiffs allege that: there was a contract between Plaintiffs and their respective employers, (R. 24-1, Compl. ¶¶ 78, 80); Defendants intentionally and unjustifiably induced a breach by the Plaintiffs' employers of their respective contracts, (*id.* at ¶¶ 41, 48-51); the breach was due to Defendants' wrongful conduct, (*id.* at ¶¶ 20, 37, 38); and Plaintiffs suffered damages. (*Id.* at ¶¶ 79, 81).

Arguably, the only element of tortious interference where the issue is even close is the second element -- whether the Defendants were aware of the contracts between Plaintiffs and

their respective employers. Plaintiffs do not specifically plead that the Defendants were aware of any contract between the Plaintiffs and their employers. Instead, Plaintiffs allege that the Defendants sent the order/notices in question directly to Plaintiffs' employers (*id.* at ¶¶ 12, 33), which creates the inference that Defendants knew the companies that the Plaintiffs worked for and were aware of the existence of a contractual relationship between the Plaintiffs and their employers. When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts. *See Doherty*, 75 F.3d at 322; *see also Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002) ("The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid. . . . All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.").

Defendants suggest that even if Plaintiffs have adequately pleaded tortious interference, Defendants are protected by a qualified privilege. (R. 8-1, Mot. to Dismiss at 23.) However, as discussed above, this argument fails because Plaintiffs have alleged that it was improper for Defendants to serve the order/notices in question on Plaintiffs' employers. (R. 24-1, Compl. at ¶¶ 16, 18, 36.) Thus, the Court finds that Plaintiffs have adequately pleaded a claim of tortious interference, and the Court must dismiss Defendants' motion to dismiss with respect to Count IV

V.     Unlicensed Practice of Law (Count V)

The Illinois Corporation Practice of Law Prohibition Act ("CPLPA") provides that "[i]t shall be unlawful for a corporation to practice law." 705 ILCS § 220/1. Further, the Illinois Attorney Act specifies that "[n]o person shall receive any compensation directly or indirectly for

10

any legal services other than a regularly licensed attorney." 705 ILCS § 205/1. Defendants

argue, however, that neither the CPLPA nor the Attorney Act provide for a private right of action

for the unauthorized practice of law and that Plaintiffs lack standing to claim damages for the

unauthorized practice of law. That is incorrect.

Illinois courts recognize a private right of action for the unauthorized practice of law

when the plaintiff alleges that the defendant represented him- or herself as an attorney or acted

negligently. *See, e.g., Torres v. Fiol*, 441 N.E.2d 1300 (Ill. App. Ct. 1982) (allowing claim for

the unauthorized and negligent practice of law); *cf. Rathke v. Lidisky*, 375 N.E.2d 871, 873 (Ill.

App. Ct. 1978) (dismissing claim for the unauthorized practice of law where the plaintiff failed

to allege that the defendant represented himself as an attorney or acted negligently). Courts in

this District, applying Illinois law, have confirmed that a plaintiff can make a claim for the

unauthorized practice of law where the plaintiff alleges that the defendants acted negligently or

represented themselves as attorneys. *Cf. Michalowski v. Flagstar Bank, FSB*, No. 01 C 6095,

2002 WL 113905, at *8 (N.D. Ill. Jan. 25, 2002) ("Illinois courts have not recognized a cause of

action for the 'unauthorized practice of law' *unless* the plaintiff alleged that defendants either

had represented themselves as attorneys, or negligently provided services, thereby causing

damages.") (emphasis added).[3]

---

[3] Plaintiffs cite a recent unpublished decision by a judge in the Circuit Court of Rock Island
County, (R. 13-1, Resp. to Mot. to Dismiss, Ex. S, *King v. First Capital Fin. Servs. Corp.*, No.
01 L 189, Apr. 12, 2002), which they suggest stands for the proposition that *Michalowski* was
wrongly decided. However, the excerpts from the court transcripts in *King* suggest that the judge
in that case did not disagree with *Michalowski* and did not rule out a private cause of action for
the unauthorized practice of law.

11

In this case, Plaintiffs specifically allege that "Defendants engaged in the unauthorized practice of law by sending [the order/notices] to plaintiffs' employers and *purporting to represent the legal interests* of plaintiffs' ex-wives." (R. 1-1, Compl. ¶ 89) (emphasis added). Plaintiffs' allegation, viewed in the light most favorable to them, does state a claim for the unauthorized practice of law.

The Court is not persuaded by Defendants' arguments that the act of sending the order/notices at issue did not constitute the practice of law. Defining what constitutes the practice of law in Illinois under the CPLPA or the Attorney Act is not a clear-cut issue. Defendants cite several cases purporting to hold that sending an order/notice for income withholding does not constitute the practice of law, but none of Defendants' cases address the particular requirements for such order/notices under Illinois law. Because the Court can grant a motion to dismiss only if it appears beyond doubt that Plaintiffs can prove no set of facts entitling them to relief, the Court denies Defendants' Motion to Dismiss with respect to Count V.

VI.    Violation of the Illinois Collection Agency Act (Count VI)

The Illinois Collection Agency Act ("ICAA") governs collection agencies, which are defined to include "any person, association, partnership, or corporation who, for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt." 225 ILCS § 425/2.02. Defendants argue that Section 425/2.04 of the ICAA, which creates certain exceptions under the statute for child support collection agencies, shields them from any liability here. (R. 8-1, Mot. to Dismiss at 24.)

12

Section 425/2.04, however, exempts child support collection agencies in five specific areas only;[4] the ICAA does not exempt child support collection agencies from the unlawful practices listed in Section 425/9(a) of the Act. Among the practices barred by Section 425/9 are (1) disclosing debt information with the knowledge that it is false or disputed; (2) falsely using any form that simulates a judicial process or that appears to be authorized by a government agency; (3) conducting business under a name that suggests that the collector is affiliated with a government agency; or (4) engaging in conduct likely to deceive or defraud the public. *See* 225 ILCS 425/9(a).

Here, Plaintiffs have alleged that Defendants' conduct violated each of these provisions of Section 425/9(a). (R. 24-1, Compl. at ¶ 100.) Thus, the Court denies Defendants' motion to dismiss with respect to Count IV.

VII.    The *Rooker-Feldman* Doctrine

Defendants argue that the Complaint should be dismissed in its entirety because the *Rooker-Feldman* doctrine applies. Specifically, Defendants argue that the Complaint should be dismissed because the issues raised by Plaintiffs' Complaint are inextricably intertwined with the divorce decrees and orders for child support entered by Illinois courts. (R. 8-1, Mot. to Dismiss at 26.)

---

[4] The five exemptions are: (i) in the frequency of contact with an obligor who is in arrears, whether by phone, mail, or other means, (ii) from contacting the employer of an obligor who is in arrears, (iii) from publishing or threatening to publish a list of obligors in arrears, (iv) from disclosing or threatening to disclose an arrearage that the obligor disputes, but for which a verified notice of delinquency has been served under the Income Withholding for Support Act . . . or (v) from engaging in conduct that would not cause a reasonable person mental or physical illness. 225 ILCS §425/2.04.

The *Rooker-Feldman* doctrine prevents federal district and appellate courts from entertaining a process to reverse or modify a state court decision. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine is a reflection of the principle that lower federal courts cannot review state court decisions. *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996). Instead, only the Supreme Court has jurisdiction to review final judgments entered by state courts. *See* 28 U.S.C. § 157.

Further, under the *Rooker-Feldman* doctrine, lower federal courts also lack jurisdiction over issues "inextricably intertwined" with state court judgments. *Nationscredit Home Equity Servs. Corp. v. City of Chi.*, 135 F. Supp. 2d 905, 909 (N.D.Ill. 2001). Although there is no bright line that separates a federal claim that is inextricably intertwined with a state court judgment from a claim that is not, "the underlying inquiry remains whether 'the district court is in essence being called upon to review the state-court decision.'" *Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Ill.*, 74 F.3d 763, 766 (7th Cir. 1996) (citing *Feldman*, 460 U.S. at 483-84 n.16).

In order to decide whether the *Rooker-Feldman* doctrine applies here, the Court must determine whether the federal plaintiff "seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim. Put another way, if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts lack jurisdiction over the claim." *4901 Corp. v. Cicero*, 220 F.3d 522, 527 (7th Cir. 2000) (internal citation omitted).

14

Plaintiffs' complaint, on its face, does not call on this Court to review the validity of state court judgments. Instead, Plaintiffs merely seek a declaratory judgment that CSE, a private collection agency, is not entitled to collect back child support from Plaintiffs, as well as damages for alleged fraud, defamation, tortious interference, unlicensed practice of law, and violation of the ICAA. In passing on those claims, this Court will not be reviewing any judgments entered by the Illinois courts. Indeed, Plaintiffs have conceded that they have no intention of challenging the underlying orders pertaining to their respective divorces. At most then, the Court will be required to assess whether Plaintiffs have failed to abide by the terms of their respective divorce decrees in order to determine whether the Defendants were authorized to collect back child support, whether the defendants committed fraud, etc. Accordingly, the *Rooker-Feldman* does not preclude Plaintiffs' claims here.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. (R. 8-1.)

ENTERED:

Judge Amy J. St. Eve
United States District Court

Dated: September 20, 2002

15