# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 632 | DATE | 4/17/2003 |
| CASE TITLE | Blair, et al vs. Supportkids, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for class certification (R. 21-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

TH✓ courtroom deputy's initials

Date/time received in central Clerk's Office

number of notices

APR 1 8 2003 date docketed

JS docketing deputy initials

date mailed notice

mailing deputy initials

Document Number: 55

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER BLAIR and JOHN GRAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) No. 02 C 0632 | |
| | ) | |
| SUPPORTKIDS, INC., d/b/a CHILD SUPPORT | ) | |
| ENFORCEMENT; and RICHARD "CASEY" | ) | APR 1 8 2003 |
| HOFFMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Plaintiffs Walter Blair and John Gray have moved for class certification on their claims for fraud (Count III), tortious interference (Count IV), unauthorized practice of law (Count V), violation of the Illinois Collection Agency Act (Count VI), and violation of the Illinois Consumer Fraud Act (VII). For the reasons set forth below, Plaintiffs' motion for class certification is denied.

## BACKGROUND

Defendant SupportKids, Inc. d/b/a as Child Support Enforcement (hereinafter "CSE") is a child support collection agency that purports to represent parents owed child support obligations. (*See* R. 24-1, Am. Complaint, ¶ 9.) Defendant Richard "Casey" Hoffman is the chief executive officer of CSE. (*Id.*, ¶ 8.)

Plaintiffs Blair and Gray allege that Defendants sent purported "Order/Notices to Withhold Income for Child Support" to their respective employers, suggesting that Blair and Gray have outstanding child support obligations. (*See* R. 24-1, Am. Complaint, ¶¶ 12, 33.)

55

Plaintiffs contend that they have satisfied their support obligations and that CSE is not entitled to collect money on behalf of their former spouses. (*Id.*, ¶¶ 41-51.) Instead, Plaintiffs suggest that under Illinois law only the appropriate public agency, the obligee, or an attorney licensed to practice law in Illinois can send the order/notices for income withholding. (*Id.*, ¶¶ 45-46.)

Plaintiffs seek a declaratory judgment that CSE is not entitled to collect $460,391.02 from Plaintiffs. (*See* R. 24-1, Am. Complaint, ¶¶ 52-53.) In addition, Plaintiffs seek damages for fraud (Count II), defamation (Count III), tortious interference with a contract (Count IV), unlicensed practice of law (Count V), violation of the Illinois Collection Agency Act ("ICAA") (Count VI), and violation of the Illinois Consumer Fraud Act ("ICFA"). (*Id.*, ¶¶ 54-125.)

Plaintiffs have moved for certification of two different classes. The first purported class, brought under the fraud, tortious interference, unauthorized practice of law, and ICFA claims, consists of "[a]ll putative Illinois obligors with respect to whom CSE has issued a purported 'order/notice of withholding' such as [the order/notices used with Blair and Gray]." (R. 21-1, Pls.' Mot. for Class Certification, at p. 1.) The second purported class, brought under the claim for violation of the ICAA, consists of "all putative Illinois obligors to whom CSE has issued a purported 'order/notice of withholding.'" (*Id.*)

## ANALYSIS

### I. JURISDICTION

As an initial matter, in their opposition to class certification, Defendants suggest that the Court should dismiss Plaintiffs' claims because they lack jurisdiction for three reasons. First, Defendants suggest that the declaratory judgment claim by the two named plaintiffs, Blair and Gray, does not satisfy the amount in controversy requirement. Second, even if Plaintiffs'

declaratory judgment claim does satisfy the amount in controversy requirement, Defendants argue that Plaintiffs' claim falls within the "domestic relations" exception to jurisdiction. Third, Defendants contend that there is no diversity jurisdiction over the Amended Complaint's class claims. None of these arguments has merit.

A. The Amount in Controversy

The Amended Complaint alleges that Defendants sent purported order/notices to the Blair and Grays' employers, seeking to collect $85,376.56 and $375,014.46 respectively. (*See* R. 24-1, Am. Complaint, ¶¶ 12, 33.) Plaintiffs seek a declaratory judgment that the Defendants are not entitled to collect these amounts, which plainly exceed the jurisdictional minimum. *See* 28 U.S.C. § 1332(a). Nonetheless, Defendants suggest that the amount in controversy requirement is not satisfied because CSE managed to collect only a few hundred dollars from Blair and Gray before they filed this lawsuit.

Without citation to any authority, Defendants argue that diversity jurisdiction can only be premised on the damages actually sustained by Blair and Gray and not the amounts that Defendants apparently believe they were entitled to collect from Plaintiffs. That is incorrect. It is well-settled that the amount in controversy in a declaratory judgment action like this is the value of the of the plaintiff's purported obligation to the defendant. *See, e.g., Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 515 (7th Cir. 1968) ("'Where an insurer denies his obligations under a liability insurance policy . . . the amount in controversy is measured by the injured third-party's bona fide claim against the insured.'") (quoting 6A James William Moore et. al., Moore's Federal Practice, ¶ 57.23 (2nd ed. 1966)).

B.  **The Domestic Relations Exception**

The domestic relations exception is premised on the rationale that domestic relations disputes have been traditionally left to the state courts, which have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703-04, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *see also Newman v. Indiana*, 129 F.3d 937, 939 (7th Cir. 1997) ("The subject of domestic relations . . . is the primary responsibility of the state courts, administering state law, rather than the federal courts."). If an action falls within the scope of the exception, the federal court lacks jurisdiction, regardless whether other jurisdictional prerequisites are satisfied. *See Lloyd v. Loeffler*, 694 F.2d 489, 491 (7th Cir. 1982); *see also Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001) ("The [domestic relations] limitation is one on subject matter jurisdiction, and is therefore not waivable by the parties.").

The precise reach of the domestic relations exception is somewhat unclear. In *Ankenbrandt*, the Supreme Court suggested in dicta that "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Id.*, 504 U.S. at 704, 112 S.Ct. at 2215. *See also Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992) ("Thus, we conclude that the domestic relations exception, as articulated by the Supreme Court in *Ankenbrandt*, is a narrow one."); *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980) ("A district court may not simply avoid all diversity cases having intrafamily aspects.").

The Seventh Circuit has emphasized that, in addition to "core" domestic relations cases involving the issuance or review of a divorce, alimony, or child custody decree, the domestic

4

relations exception also has a penumbra that extends to "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). *See also Allen v. Allen*, 48 F.3d 259, 261 n.2 (7th Cir. 1995) (holding that a constitutional claim involving custody dispute falls within the domestic relations exception).

The mere fact that a particular case is related to or arises out of a divorce, custody or support issue, however, is not sufficient to implicate the domestic relations exception. *See Friedlander*, 149 F.3d at 740-41 ("We have held in *Lloyd* that the domestic relations exception did not extend to proceedings that merely arise out of a domestic relations dispute; and any doubt about the validity of that holding was dispelled by *Ankenbrandt*."); *Kuhn v. Kuhn*, No. 98 C 2395, 1998 WL 673629, at *4 (N.D. Ill. Sept. 16, 1989) ("The domestic relations exception bars a federal court from exercising jurisdiction over a case involving one of more of the 'distinctive forms of relief associated with domestic relations jurisdiction . . . '") (citation omitted).

Here, Plaintiffs' declaratory judgment action does not fall within the core of the domestic relations exception because Plaintiffs do not seek a divorce or an annulment, an award of child custody, or a decree of alimony or child support. Moreover, the action does not fall within the penumbra because it is not a typical ancillary proceeding that would involve review of a divorce or support decree. Instead, Plaintiffs allege that Defendants are not entitled to represent their former wives and cannot collect any money from them. At most, resolution of Plaintiffs' claims would involve inquiry into whether CSE was correct when it claimed that Blair and Gray have unsatisfied support obligations, rather than an actual challenge to those support obligations. Accordingly, the domestic relations exception is not implicated. *See Kuhn*, 1998 WL 673629, at

*4 (holding that the domestic relations exception did not apply to tort claims arising out of divorce action because those claims did not involve "distinctive forms of relief associated with domestic relations jurisdiction.") (internal citation and quotation omitted).[1]

### C. Alleged Members of the Purported Class

Because this Court has jurisdiction over the claims of the named plaintiffs, Blair and Gray, based on diversity, the Court has supplemental jurisdiction over the claims of the alleged members of the purported class. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 930-31 (7th Cir. 1996); *In re Starlink Corn Products Liab. Litig.*, 211 F.Supp.2d 1060, 1065 (N.D. Ill. 2002) ("In the Seventh Circuit, as long as one named plaintiff satisfies the jurisdictional amount, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over other plaintiffs with related claims.").

## II. CLASS CERTIFICATION

Plaintiffs bear the burden of proving that their proposed classes meet each of the requirements set forth in Federal Rule of Civil Procedure 23(a) and 23(b)(3). *See Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). Initially, Plaintiffs must meet the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Rule 23(a). *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). In addition, Plaintiffs must also satisfy the requirements that common issues of fact and law predominate and that the class

---

[1] Defendants suggest that this case is analogous to *Surface v. Dobbins*, No. MC-3-89-021, 1993 WL 1318609 (S.D. Ohio Sept. 23, 1993). There, the court held an action by an employee challenging the garnishment of his wages to pay back child support was covered by the domestic relations exception because the employee apparently sought to invalidate the underlying support order. *Id.*, at *4 ("If the federal court is not competent to issue a domestic relations order, it cannot be competent to *review and invalidate* one.") (emphasis added). *Surface* is inapposite because here Plaintiffs have not asked this Court to review and invalidate a support order.

6

action device would be a superior means of resolving this controversy under Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Vargas v. Universal Mortg. Corp.*, No. 01 C 0087, 2001 WL 1545874, at *1 (N.D. Ill. Nov 29, 2001). Failure to establish any one element requires denial of their motion for class certification. *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980).

Plaintiffs assert that there are numerous common issues of fact and law, including whether: (i) the order/notices of income withholding served by CSE are a fraudulent simulation of legal process; (ii) CSE intended to induce reliance by employers by using the order/notices of income withholding; (iii) CSE is engaged in the unauthorized practice of law by issuing such documents; and (iv) CSE has tortiously interfered with the employment of the alleged members of the purported class by issuing such documents. (R. 21-1, Pls.' Mot. for Class Certification, at p. 4.) Setting aside whether, indeed, these are truly common issues, this Court must decide whether these alleged common issues would predominate over individual issues.

To satisfy the predominance requirement, a plaintiff must demonstrate that common issues of law and fact are central to all of their claims. *Williams v. Ford Motor Co.*, No. 97 C 162, 2000 WL 263706, at *3 (N.D. Ill. Feb. 25, 2000); *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529 (N.D. Ill. 1998). The court must "probe behind the pleadings" to understand the parties' claims and defenses and determine whether they are subject to proof by common evidence. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2375, 72 L.Ed.2d 740 (1982). *See also Alexander v. Q.T.S. Corp.*, No. 98 C 3234, 1999 WL 573358, at *4 (N.D. Ill. July 30, 1999) (the court "'may examine the substantive elements of the underlying

7

cause of action to determine if they are amenable to class-wide proof'") (citation omitted). If liability questions are not subject to class wide proof but, rather, would require "both individual and fact intensive" determinations, common issues cannot be found to predominate. *Roman v. First Franklin Financial Corp.*, No. 00 C 7228, 2001 WL 322563, at *2 (N.D. Ill. March 3, 2001). *See also Dhamer*, 183 F.R.D. at 530 ("When individual issues that cannot be resolved on a class-wide basis dominate, the litigation should not proceed as a class action.").

In this case, there are several individual issues that defeat the predominance requirement. In particular, determining whether the order/notices sent by CSE were actually fraudulent to assert the existence of unsatisfied support obligations would require numerous fact intensive individual inquiries into the support obligations of every allegedly delinquent husband or father. The allegations of the Amended Complaint illustrate that resolving these issues will be no simple matter. For example, although Gray admits that his divorce decree obligated him to provide $60 per week to support three children, he contends that this decree was informally modified and that the decree was never revived. (*See* R. 24-1, Am. Complaint, ¶¶ 22-26.) Determining whether CSE was correct to assert that Gray owed $375,014.46 in back child support would require the Court to weigh evidence concerning the original divorce decree, the alleged subsequent modification of that decree, and Gray's efforts to fulfill any remaining support obligations. The Court would have to repeat such an individual and fact intensive inquiry for every alleged member of the purported class in order to assess whether the order/notices were fraudulent.

In addition, resolving Plaintiffs' fraud claims will require numerous fact intensive individual inquiries concerning whether the employers who received purported order/notices from CSE relied upon them and whether the order/notices caused any damages. Such individual

8

issues of causation, reliance and damages plague class actions brought for fraud, and the courts frequently deny class certification in such cases because those issues generally predominate over any alleged common issues of fact or law. *See, e.g., Johnson v. Aronson Furniture Co.*, No. 96 C 117, 1998 WL 641342, at *7 (N.D. Ill. Sept. 11, 1998); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D. Ill. 1998).

Individual issues likewise doom Plaintiffs' proposed class under the ICAA claim. Plaintiffs allege that CSE's use of the order/notices violates several different provisions of the ICAA, including the provision that prohibits the disclosure of "information adversely affecting a debtor's reputation for credit worthiness *with knowledge the information is false,*" 225 ILCS § 425/9(a)(13) (emphasis added), and the provision that bars the disclosure of "information concerning the existence of a debt which the debt collector *knows* to be reasonably disputed by the debtor without disclosing the fact that the debtor disputes the debt." *Id.* § 425/9(a)(18) (emphasis added). Resolving claims under each of these subsections will require numerous fact intensive individual inquiries concerning what CSE knew about the support obligations of each of the persons it targeted for order/notices for incoming withholding. The need for such plaintiff specific inquiries defeats predominance over the class for the ICAA claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (R. 21-1) is denied.

Dated: April 17, 2003

ENTERED:

Judge Amy J. St. Eve
United States District Court